**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MISSION PHARMACAL COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 5:13-cv-176 - OLG** |
| | § | |
| **v.** | § | |
| | § | |
| **VIRTUS PHARMACEUTICALS, LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**PLAINTIFF MISSION'S RESPONSE TO**
**VIRTUS'S MOTION TO AMEND SCHEDULING ORDER**

Mission Phamacal Company ("Mission") responds to Virtus's Motion to Amend the Scheduling Orders (Doc. No. 33) ("Motion") as follows:

## SUMMARY

Virtus would insert more than 1½ years of delay into this case with the addition of its proposed *Markman* hearing. Everything Virtus seeks can be accomplished through traditional discovery and motion practice, and can be accomplished within the timeline of the current schedule. Instead of working within the current schedule, Virtus proposes a *Markman* hearing for the summer of 2014 or later, several months after the currently-scheduled trial date of February 2014. Worse yet, Virtus would hold hostage every meaningful deadline—discovery, expert reports, motions, and trial—until after the court issues its *Markman* order, which would delay the trial from February 2014 to the last half of 2015.

The parties can efficiently prepare and resolve this case within the current schedule, just like Mission has done before this court in a similar suit involving the same patent. In *Mission*

*Pharmacal Company v. PureTek Corporation*, Case No. 5:12-cv-920-OLG, the parties have followed a case schedule based on this court's standard schedule, which is very similar to the current schedule in this case. *Puretek Scheduling Order*, ECF 16, Ex. 1. In the Puretek case, the parties have completed discovery, exchanged expert reports, and filed dispositive motions involving the same patent as this case—all without a *Markman* hearing. In this case, Mission is willing to incorporate a *Markman* procedure that does not delay the case, but Virtus has been unwilling to discuss a *Markman* procedure that does not involve a 1½ year delay.

Only Virtus benefits from its requested delay. Virtus sells a generic version of two (soon to be three) of Mission's patented prenatal vitamins. With every additional day of infringement, Virtus steals sales and market share from Mission. If Virtus is successful in significantly delaying the trial, Mission will have to consider pursuing a preliminary injunction, especially since Virtus is releasing new generic versions of Mission's patented products. The preliminary injunction process would increase costs for both parties and consume additional judicial resources.

Virtus has failed to show good cause to modify the current scheduling order. Fed. R. Civ. P. 16(b)(4). The parties can address all of the patent-specific issues raised in Virtus's motion without modifying the current schedule. Virtus's motion to amend the schedule should be denied.

## FACTS

Mission owns U.S. Patent 6,521,247 ("the '247 Patent") entitled "Dual Iron Containing Nutritional Supplement" and sells several prenatal vitamins that are covered by that patent. Soon after Virtus began selling generic versions of some of Mission's products Mission filed this lawsuit. Although the '247 Patent includes 56 total claims, in its first set of interrogatories

served on Virtus on May 15, 2013, Mission defined the "Asserted Claims" as nineteen specific claims.  Mission's First Set of Interrogatories, Ex. 2.

Counsel for both parties conferred and agreed to a scheduling order that was subsequently adopted by this court.  ECF 32.  Virtus hired new counsel who then conferred with Mission's counsel to discuss the possibility of including a *Markman* proceeding in the schedule. In response Mission stated that it "is willing to agree to a Markman procedure, whether it is a stand-alone hearing or incorporated in dispositive motions or the pretrial conference, but so long as it does not significantly alter the critical deadlines of discovery, expert reports, and scheduling conference."  *Walker email, June 6, 2013*, Ex. 3 (highlighting added).  Virtus now moves the court to amend the scheduling order as summarized in the chart below.

| Event | Current Schedule | Virtus Proposed Schedule |
|---|---|---|
| *Plaintiff's infringement contentions* | Via Discovery | August 29, 2013 |
| *Invalidity Contentions* | Via Discovery | December 9, 2013 |
| *Exchange of Claim Construction Terms* | Via Discovery | March 7, 2013 |
| *Complete Claim Construction Briefing* | Via Discovery | July 24, 2014 |
| *Claim Construction Hearing* | As part of motion practice. | August 15, 2014 (Assumed) |
| *Claim Construction Ruling* | As part of motion practice. | November 13, 2014 (Assumed based on 90 days from hearing) |
| *Complete Expert Reports* | September 6, 2013 | February 26, 2015 (105 days after Markman Ruling) |
| *Discovery Deadline* | October 10, 2013 | April 13, 2015 (150 days after Markman Ruling) |

| ***Dispositive Motions*** | October 24, 2013 | May 12, 2015 (180 days after Markman Ruling) |
|---|---|---|
| ***Pretrial Conference*** | January 30, 2014 (98 days from Dispositive Motions) | August 18, 2015 (Assumed as 98 days from Dispositive Motions) |
| ***Jury Section and Trial*** | February 3, 2014 (4 days from pretrial conference) | August 24, 2015 (Assumed) |

Under Virtus's proposed schedule, the parties would have until about April 2015 to conclude discovery—almost two years after Mission filed the complaint.  In addition, the *Markman* hearing would not take place until the summer of 2014, and expert reports and dispositive motions would not be complete for another six months after that.

## ARGUMENT AND AUTHORITIES

I. **PATENT-SPECIFIC ISSUES CAN BE ADDRESSED UNDER THE CURRENT SCHEDULE.**

Although many courts have adopted local patent rules, most courts have not.  Local patent rules may streamline the issues in some cases, but may not be necessary in all cases.  In this case, the current schedule would allow the parties to resolve their dispute if the parties do not delay.

    A. **Virtus's proposed schedule seeks to unduly delay this case as many of the obligations imposed by Virtus's patent-specific deadlines are already in place.**

Virtus argues that its proposed scheduling order includes specific deadlines to address patent-specific issues such as: 1) plaintiff's disclosure of asserted claims, infringement contentions, and documents, and 2) Defendant's disclosure of invalidity contentions and documents.  Motion at 4.  However, regarding plaintiff's disclosures, Mission has already

disclosed what claims it is asserting against Virtus (*see* Ex. 2, at ¶ 12) and has disclosed, in a letter dated May 15, 2013, claim charts showing how those claims are infringed by Virtus's products.  Mission has also largely completed its document production.  The parties do not need to schedule a date for something that has already been done.

Regarding Defendant's disclosures, on May 15, 2013 Mission served interrogatories seeking Virtus's invalidity contentions and has requested invalidity-related documents.  *See* Ex. 2, Interrogatory Nos. 6-9.; *see also* Mission's Request For Production No. 16 (Ex. 4).  As such, Virtus is already under an obligation to disclose the information that it is attempting to push off by several months to December 9, 2013.  Moreover, Virtus refuses to disclose such information it already possesses—Virtus must have claim constructions in mind as it asserts it does not infringe Mission's patent and that Mission's patent is invalid.   In response to Mission's Interrogatory No. 5 (Ex. 2), which asks for Virtus's claim construction, Virtus responded that "Virtus states that discovery is ongoing, and it will supplement this response with its proposed claim construction(s) pursuant to is supplementation obligation under the Rules."  An additional deadline many months away is unnecessary and serves only to delay what should be happening now.

      B.      **Virtus has refused to accommodate claim construction proceedings within the current schedule.**

Mission has offered to include claim construction proceedings within the current schedule.  *See* Ex. 3.  Virtus argues that early claim construction will increase the efficiency of this case and promote settlement (*see* Motion Sections II.C and II.D) yet Virtus refuses to disclose its claim construction positions.  Mission agrees that determining the parties' claim construction positions early in the litigation promotes efficiency and may encourage rapid settlement.  However, under Virtus's proposed schedule, the parties would not even begin

exchanging the terms they believe should be construed until March 7, 2014, more than one month after the current trial date.

Mission is not opposed to completing various tasks in order to promote efficiency. However, Mission is opposed to postponing what the parties could and should be doing now. Virtus should disclose its claim construction and invalidity positions now, which it already possesses based on its interrogatory responses, and the parties could then evaluate whether any claim construction disputes require the court's attention.

C.     **The complexity of the '247 Patent does not justify delaying the claim construct process to more than a year from now.**

Virtus argues that complexity of the '247 patent justifies its patent-specific deadlines. Motion at 9.  Yet, as discussed above, Virtus refuses to disclose its claim construction positions that it already has.  Moreover, although the '247 patent contains 56 claims, Mission has made it clear that it is only asserting nineteen claims in this lawsuit.  *See* Ex. 2, at ¶ 12.  Even if the portions of the '247 patent were complex, it does not necessarily follow that those complexities result in claim construction disputes that require a *Markman* hearing.  *See Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("*Markman* does not require a district court to follow any particular procedure in conducting claim construction… District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol.") (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), aff'd 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)); *see also Aspex Eyewear, Inc. v. E'Lite Optik, Inc.,* Case No. 3:98-cv-2996, 2001 U.S. Dist. LEXIS 2088 (N.D.Tex. February 27, 2001) ("Nothing, however, mandates the use of a *Markman* hearing because courts retain the discretion to construe the claims on the basis of a paper record alone… where the

57201311.2

6

technology is accessible to the court and the claims are relatively straightforward, a *Markman* hearing is unnecessary."). Mission has attempted to identify the disputes between the parties and resolve those disputes within the court's scheduling order. Rather than attempt to identify specific claim construction issues between the parties and explore ways to resolve those issues within the current schedule, Virtus is attempting to postpone those discussions until next year.

## II.   VIRTUS'S PROPOSED DELAY WILL SIGNIFICANTLY PREJUDICE MISSION

Virtus's sales directly displace sales that would have been made by Mission. In addition, Virtus's sales harm Mission's market by selling products that are not identical to Mission's branded products. The delays proposed by Virtus would result in irreparable harm to Mission. In addition, if the court were to adopt Virtus's proposed schedule, Mission would have to consider seeking a preliminary injunction.

### A.   Virtus's delay will irreparably harm Mission through lost sales, lost market share, and damaged consumer perception of its patented product.

The Virtus products that Mission is accusing of infringing its '247 Patent are generic substitutes for Mission's branded products. Virtus only sells its accused products when a patient who has been prescribed a Mission product is sold a Virtus product instead. Therefore, each sale that Virtus makes of an accused product takes away a sale that would have been made by Mission. That lost sale not only reduces Mission's profit, it also reduces Mission's market share. In addition, although Virtus's products are sold as generics to Mission's products, the products are not identical and Virtus's sales may be further harming Mission's market for its patented pre-natal vitamins. Mission uses higher-quality ingredients and more demanding manufacturing procedures than those used by manufactures of generic pharmaceuticals. As such, a patient may buy a Virtus product thinking it is identical to Mission's product, yet not receive the same

quality.  Thus, Virtus's sales may harm Mission more than simply the lost profits it would have made for individual Virtus sales.

> **B.     The proposed schedule would increase case costs.**

Virtus argues that a later trial date will not cause irreparable harm to Mission because "Mission's complaint does not seek a temporary injunction."  Motion at 6.  Virtus's conclusion is incorrect.  Under the current schedule, this dispute will be resolved quickly and efficiently and a preliminary injunction may not be necessary.  However, if the court were to adopt Virtus's proposed schedule, Mission would have to reconsider its decision and may be forced to pursue a preliminary injunction, especially since Virtus appears to be releasing new generic versions of patented Mission prenatal vitamins.

Virtus's infringement is causing Mission irreparable harm.  If the parties litigate this case according to their agreed schedule, that harm will be minimized through an efficient court schedule.  However, if this litigation is delayed as requested by Virtus, it may be impossible to adequately compensate Mission for Virtus's infringement.  35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement…").

## III.    CONCLUSION

Virtus has failed to show good cause for amending the agreed scheduling order.  Virtus's proposed scheduling order would unduly delay this case by more than a year and a half, which would cause Mission irreparable harm.  This court should deny Virtus's motion to amend the scheduling order and allow this case to proceed under the schedule agreed to by Virtus's original counsel.

57201311.2

Dated: July 11, 2013                                  Respectfully submitted,


                                                      */s/ Charles B. Walker, Jr.*
                                                      Charles B. Walker, Jr.
                                                      Texas Bar No. 00794808
                                                      cwalker@fulbright.com
                                                      Daniel A. Prati
                                                      Texas Bar No. 24070446
                                                      dprati@fulbright.com
                                                      FULBRIGHT & JAWORSKI L.L.P.
                                                      1301 McKinney, Suite 5100
                                                      Houston, Texas 77010
                                                      Telephone: (713) 651-5151
                                                      Fax: (713) 651-5246
                                                      **ATTORNEYS FOR PLAINTIFF MISSION
                                                      PHARMACAL CO.**



## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2013, I served the foregoing through the notice of

electronic filing through the court's CM/ECF system on all counsel of record.


                                                      */s/ Daniel A. Prati*
                                                      Daniel A. Prati